IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

VERNON DAVIS     *
    *
    v.     *     Civil Case No. CCB-13-1387
    *
COMMISSIONER, SOCIAL SECURITY     *
    *
*************

## REPORT AND RECOMMENDATIONS

Pursuant to Standing Order 2013-06, the above-referenced case was referred to me to review the parties' cross-motions for summary judgment and to make recommendations pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 301.5(b)(ix). I have considered the parties' motions. ECF Nos. 11, 13. This Court must uphold the Commissioner's decision if it is supported by substantial evidence and if proper legal standards were employed. 42 U.S.C. § 405(g); *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996); *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). I find that no hearing is necessary. Local R. 105.6 (D. Md. 2011). For the reasons set forth below, I recommend that both motions be denied, and that the case be remanded to the Commissioner for further proceedings in accordance with this Report and Recommendations.

Mr. Davis applied for Disability Insurance Benefits on August 1, 2006, alleging a disability onset date of June 22, 2006. (Tr. 197-202). His claim was denied initially on January 30, 2007, and on reconsideration on June 15, 2007. (Tr. 118-21, 125-26). An Administrative Law Judge ("ALJ") held a hearing on September 9, 2008, (Tr. 41-70), and subsequently denied benefits to Mr. Davis in a written opinion dated December 11, 2008. (Tr. 99-113). On October 25, 2010, the Appeals Council issued a decision remanding Mr. Davis's case to the ALJ for further proceedings. (Tr. 114-17). The ALJ held a second hearing on October 18, 2011. (Tr. 71-96). In a second written opinion dated November 8, 2011, the ALJ awarded benefits for the period between June 22, 2006 and October 8, 2008, but found medical improvement as of

October 9, 2008, and therefore denied benefits to Mr. Davis after that date. (Tr. 17-40). The Appeals Council then declined review, (Tr. 1-4), making the ALJ's 2011 decision the final, reviewable decision of the agency.

The ALJ found that, since June 22, 2006, Mr. Davis suffered from the severe impairments of status post traumatic brain injury, adjustment disorder, right shoulder AC joint separation and surgical fixation and dislocation of the right metacarpals. (Tr. 26). Despite these impairments, the ALJ determined that, after October 8, 2008, Mr. Davis retained the residual functional capacity ("RFC") to:

> perform light work as defined in 20 CFR 404.1567(b) except the claimant can lift 20 pounds occasionally and 10 pounds frequently. The claimant can stand for 1 hour, and sit for 1 hour, consistently on an alternate basis, for 8 hours a day, 5 days a week. The claimant should avoid heights, hazardous machinery, temperature extremes and humidity extremes. He should avoid stair climbing and the climbing of ropes and ladders, and the like. The claimant can perform jobs that do not require fine dexterity or manipulation with the right hand. The claimant is mildly limited in push/pull with the right upper extremity. The claimant cannot perform overhead reaching or repetitive neck turning jobs. The claimant could perform simple, unskilled, work, svp 1 or 2 in nature, low concentration, low memory, low stress, meaning jobs that have no changes in the workplace, decision making, production rate work or judgment to speak of, that provides one and two step tasks. The claimant can perform jobs that allow him to deal with things rather than people.

(Tr. 33). After considering testimony from a vocational expert ("VE"), the ALJ determined that Mr. Davis was capable of performing work existing in significant numbers in the national economy. (Tr. 35-36). Accordingly, the ALJ determined that, as of October 9, 2008, Mr. Davis was not disabled. *Id.*

Mr. Davis disagrees. He raises three primary arguments in support of his appeal: (1) that the ALJ erred in evaluating his residual functional capacity; (2) that the ALJ failed to include any limitation relating to his difficulties in social functioning; and (3) that the ALJ improperly rejected the conclusions of a treating physician, Dr. Kathleen B. Kortte. Pl. Mot. 5-11. While I disagree with Mr. Davis's contention about his social functioning, Mr. Davis's first and third

2

arguments have some merit. Specifically, the ALJ did not provide sufficient analysis to support his apparent conclusion that Dr. Kortte's October 8, 2008 evaluation demonstrated sufficient medical improvement to justify an RFC assessment permitting substantial gainful employment. I therefore recommend remanding the case to the Commissioner so that the ALJ can fulfill his duty of explanation.

Turning first to the unsuccessful argument, Mr. Davis contends that the ALJ did not include "any specific limitation in his residual functional capacity assessment related to this moderate impairment, other than to note that the Plaintiff was capable of performing jobs which allow him to deal with things, rather than people." Pl. Mot. 9. While the ALJ perhaps did not use the most artful wording, the limitation included in the RFC assessment adequately addressed Mr. Davis's limitation in social functioning by restricting his social contact with people during the workday. I therefore find no basis for recommending remand on this issue.

However, I do agree that the ALJ failed to fulfill his duty of explanation with respect to his selection of October 9, 2008 as the date of medical improvement. The ALJ appeared to believe that the October 8, 2008 neurobehavioral status examination and testing by Dr. Kortte provided the required evidence of medical improvement. (Tr. 34). However, Dr. Kortte provided a detailed report of her extensive evaluation and testing, after which she concluded, "In addition to his core cognitive impairments in those areas, Mr. Davis experiences mental fatigue, which negatively affects his ability to persist through daily life tasks. During the current evaluation, fatigue was observed to impact his ability to mentally manipulate information, his fine motor precision and speed, and his ability to inhibit both external and internal distractions. Fatigue and distractibility likely account for within [sic] variability of performance observed during some tasks." (Tr. 679). Dr. Kortte further concluded, "Mr. Davis' goals of returning to work are achievable, but in a supportive environment and reduced hours. He currently fatigues

too easily to return to full time employment." *Id.*

The ALJ did not accept the conclusion in Dr. Kortte's report, stating that it "is not well-supported . . . consistent with the remainder of the longitudinal medical record. Furthermore, regardless of the examiner's conclusions about the claimant's disabled status, opinions regarding a claimant's ability to work are administrative findings and as such are reserved to the Commissioner." (Tr. 35). However, a thorough reading of the ALJ's opinion does not reveal any specific evidence in the longitudinal medical record supporting the notion that Mr. Davis was capable of sustaining work for eight hours per day, five days per week, on or around October 9, 2008. The ALJ cited portions of the "social history" section of Dr. Kortte's report, which do not meaningfully contradict Dr. Kortte's specific observations from her testing. The ALJ also cited a medical report from October 21, 2008, but failed to note that, on that date, Mr. Davis had reported "daytime fatigue since his accident." (Tr. 681). The ALJ next relied upon a report from October 29, 2008, suggesting that the report indicated only "occasional fatigue." (Tr. 34). However, the report goes on to say that Mr. Davis was "experiencing some occasional moments of loss of stamina," that the doctor prescribed medication to be taken on an as needed basis for decreased energy level, and that the doctor noted that Mr. Davis "may not be able to return to work." (Tr. 713-14). Finally, the ALJ cited to a November 5, 2008 report for the proposition that, "His prognosis was good with respect to returning to the work-force." (Tr. 34). However, that report actually says, "The prognosis is good that with the support of a vocational counselor and a slow return to working, he will successfully re-enter competitive employment." (Tr. 728).

I therefore cannot discern, from the ALJ's opinion, the existence of substantial evidence to support his conclusion that the portion of Dr. Kortte's October 8, 2008 opinion in which she assessed that Mr. Davis fatigued too easily to return to full-time work was inconsistent with the

4

longitudinal medical record. I therefore recommend remand for further explanation by the ALJ of his determination that Mr. Davis could sustain full-time employment as of October 9, 2008. In so recommending, I express no opinion as to whether the ALJ's ultimate conclusion was correct or incorrect.

CONCLUSION

For the reasons set forth above, I respectfully recommend that:

1. the Court DENY Defendant's Motion for Summary Judgment (ECF No. 13);

2. the Court DENY Plaintiff's Motion for Summary Judgment (ECF No. 11); and

3. the Court order the Clerk to REMAND the case to the Commissioner for further proceedings and to CLOSE this case.

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b)(2) and Local Rule 301.5.b.

Dated: February 24, 2014 /s/
Stephanie A. Gallagher
United States Magistrate Judge